**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephanie Bakarich,<br><br>    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>    Defendant. | No. CV-13-02620-PHX-JZB<br><br>**ORDER** |

  Plaintiff Stephanie Bakarich seeks review of the Social Security Administration Commissioner's decision denying her social security benefits under the Social Security Act. (Doc. 1; Doc. 13.) For the reasons below, the Court will reverse the Commissioner's decision and remand this matter for further proceedings.

**I. Background**

  On December 2, 2010, Plaintiff filed an application for supplemental security income (SSI) benefits under Title XVI of the Social Security Act. (AR[1] 559-66.) In April 2011, Plaintiff filed an application for disability insurance (DI) benefits under Title II of the Act.[2] (*Id.* at 79-80.) In both Applications, Plaintiff asserts disability beginning

---

[1] Citations to "AR" are to the administrative record.

[2] Plaintiff previously filed applications for SSI and DI benefits in 2005. (*Id.* at 575-86.) The Social Security Administration denied Plaintiff's DI benefits application, but granted Plaintiff SSI benefits on January 30, 2006. (*Id.* at 38.) The Social Security Administration terminated Plaintiff's SSI benefits on May 1, 2007, because Plaintiff was incarcerated. (*Id.*)

on October 14, 1998.³ (*Id.* at 79-81, 559.) Plaintiff's applications were initially denied on April 11, 2011, and her DI application was denied upon reconsideration. (*Id.* at 47-51, 53-55, 569-73.) On August 4, 2011, Plaintiff requested a hearing. (*Id.* at 56.) Subsequently, both applications were set for a hearing. (*Id.* at 58-60.) In a decision dated January 30, 2013, Administrative Law Judge (ALJ) Paula Fow denied Plaintiff's applications for benefits. (*Id.* at 20-29.) On June 7, 2013, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner of the Social Security Administration. (*Id.* at 11-14.)

Having exhausted the administrative review process, on December 23, 2013, Plaintiff sought judicial review of the ALJ's decision by filing a Complaint in this Court pursuant to 42 U.S.C. § 405(g). (Doc. 1.) On May 9, 2014, Plaintiff filed an Opening Brief, seeking remand of this case to the Social Security Administration for an award of benefits. (Doc. 13.) On July 9, 2014, Defendant filed a Response Brief in support of the Commissioner's decision. (Doc. 16.) On September 4, 2014, Plaintiff filed a Reply Brief. (Doc. 17.) On February 12, 2015, Defendant filed a Notice of Supplemental Authority, arguing that the Ninth Circuit's decision in *Treichler v. Comm'r of SSA*, 775 F.3d 1090 (9th Cir. 2014), requires the Court to remand for further proceedings, instead of for an award of benefits, should the Court find reversible error. (Doc. 19.) Plaintiff filed a Response on February 25, 2015, arguing that Plaintiff is disabled and an award of benefits is appropriate even under the Court's holding in *Treichler*. (Doc. 20.)

---

³ Plaintiff claims that prior to the administrative hearing, she amended her alleged onset date to December 2, 2010 and, therefore, the ALJ should not have considered records prior to that date. (Doc. 13 at 5 n.1.) However, as Plaintiff notes, there is no such motion included in the record. Further, Plaintiff testified at the hearing that the onset date was "about 1998" or 1999. (*Id.* at 616.) SSI benefits are not payable prior to the month following the month in which the application was filed. *See* 20 C.F.R. § 416.335. But, because Plaintiff filed applications for both DI and SSI benefits and alleged an onset date in October 1998, the ALJ did not generally err in considering medical evidence in the record prior to December 2, 2010. *See* 20 C.F.R. § 416.912(d). The Court will address the ALJ's treatment of the record evidence more specifically in its analysis below.

- 2 -

## II. Legal Standards

### a. Standard of Review

The Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's disability benefits determinations. The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *see also Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720; *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn*, 495 F.3d at 630 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Similarly, the Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

### b. The ALJ's Five-Step Evaluation Process

To be eligible for Social Security benefits, a claimant must show an "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). A person is under a disability only:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step evaluation process to determine whether an applicant is disabled under the Social Security Act:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity" in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Applying the five-step evaluation process, the ALJ found that Plaintiff is not disabled and is not entitled to benefits. (*Id.* at 29.) At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (*Id.*

at 23.)[4]  At step two, the ALJ found that Plaintiff has the following severe impairments: asthma, chronic obstructive pulmonary disease (COPD), spina bifida occulta, bipolar disorder, obsessive compulsive disorder (OCD), borderline personality disorder, and substance abuse, in remission.  (*Id.*)  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.  (*Id.* at 23-24.)

At step four, the ALJ found the following:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b).  However, [Plaintiff] would be limited to occupations requiring no more than simple, routine, and repetitive tasks, not performed in a fast-paced production environment and involving relatively few work place changes.

(*Id.* at 24.)  The ALJ further found that Plaintiff has "no past relevant work." (*Id.* at 28.) At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform.  (*Id.*)  Given that finding, the ALJ concluded that Plaintiff is not disabled under sections 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act. (*Id.* at 29.)

### III.  Analysis

As an initial matter, Plaintiff appears to contend that only her application for SSI benefits was before the ALJ.  (Doc. 13 at 2, 5.)  However, as detailed above, the record includes two applications, one filed on December 2, 2010 for SSI benefits, and one filed on April 11, 2011 for DI benefits, and the ALJ considered and made decisions regarding both applications. Plaintiff asserts that "[t]he ALJ noted the claim is for SSI benefits at hearing. TR 589." (*Id.*)  But, in the record to which Plaintiff cites, the ALJ actually states that the proceeding "involve[d] applications for Supplemental Security Income *and* Disability Insurance Benefits."  (*Id.* at 589) (emphasis added).  Regardless, in her briefing, Plaintiff only addresses the ALJ's treatment of her SSI application related to her

---

[4] With regard to Plaintiff's claim for DI benefits, the ALJ also found that Plaintiff "meets the insured status requirements of the Social security Act through September 30, 2001." (*Id.* at 22.)

mental impairments. Therefore, the Court will only review those issues here.

Plaintiff argues that the ALJ's decision is defective for four reasons: (1) the ALJ erroneously weighed medical source evidence; (2) the ALJ improperly evaluated Plaintiff's credibility and discounted her testimony; (3) the ALJ improperly evaluated third-party testimony by Plaintiff's mother; and (4) the ALJ failed to consider Plaintiff's social limitations. The Court addresses these arguments below.

### a. Weighing of Medical Source Evidence

Plaintiff argues that the ALJ erred in weighing the opinions of Dr. Sharon Steingard, examining physician, and a state agency, non-examining source. (Doc. 13 at 4-5.) Plaintiff further argues that the ALJ erred in her treatment of Plaintiff's May 3, 2011 serious mental illness (SMI) benefits eligibility determination. Below, the Court addresses these arguments.

### i. Legal Standard

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th

1  Cir. 1986).  But "[t]he ALJ must do more than offer his conclusions.  He must set forth
2  his own interpretations and explain why they, rather than the doctors', are correct."
3  *Embrey*, 849 F.2d at 421-22.  "The opinion of a non-examining physician cannot by itself
4  constitute substantial evidence that justifies the rejection of the opinion of either an
5  examining *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis in original)
6  (citations omitted).

### ii.  Dr. Sharon Steingard's Opinions

Plaintiff argues that the ALJ erred in failing to give the opinions of Dr. Steingard "controlling weight."  (Doc. 13 at 4-5.)  Dr. Steingard examined Plaintiff on March 7, 2011.  (AR 442.)  During the exam, Dr. Steingard noted that Plaintiff had normal alertness, her gait was unremarkable, facial expression was variable, eye contact was good, but her attention span was poor and she was hyperactive.  (*Id.* at 446.)  She noted that Plaintiff was rocking, her feet were almost constantly moving, and she seemed agitated and anxious.  (*Id.*)  Her speech was unremarkable, and she did not have any significant depressive thought content.  (*Id.*)  She could make a simple comparison and her insight and judgment appeared intact.  (*Id.*)  Her score on the mini mental state exam was 28 out of 30.  She had some trouble with more complicated directions such as the three step command.  (*Id.*)  She had poor general fund of information, and she could not comment on a recent news story.  (*Id.*)  "She did not know in what direction the sun rose." (*Id.*)  At the time of the examination, Plaintiff reported that she had been prescribed Xanax, Wellbutrin, and Gabapentin, but had stopped taking those medications and was not in "formal psychiatric care or treatment."  (*Id.* at 445-46.)

Dr. Steingard noted in her findings that Plaintiff "gives a picture of episodes of mania as well as depression, panic attacks with agoraphobia.  The extent of OCD behaviors is vague from [Plaintiff's] report, no repetitive behaviors were observed."  (*Id.*) Dr. Steingard further noted that Plaintiff "had difficulty focusing on tasks especially during the interview portion of the evaluation.  She should not be managing benefits if deemed eligible to receive them."  (*Id.*)  Finally, Dr. Steingard noted that Plaintiff "is not

currently in formal psychiatric care or treatment and is currently noncompliant with medication management. Prognosis could be significantly improved with formal psychiatric care or treatment and consistency with medication." (*Id.*)

Based on her examination, Dr. Steingard completed a Psychological/Psychiatric Medical Source Statement. (*Id.* at 447-48.) In the Statement, Dr. Steingard opined that Plaintiff has limitations that will last for 12 months. (*Id.* at 447.) Dr. Steingard further opined that although Plaintiff's score on the MMSE does not suggest cognitive impairment, a couple of instructions had to be repeated, "[s]he had some trouble focusing and would likely need a lot of extra supervision on a job and will need instructions repeated for different directions especially more complicated directions." (*Id.* at 448.) Additionally, Dr. Steingard noted that Plaintiff has a "diminished ability to maintain pace and persistence on task in the work place," based on Dr. Steingard's observations during the exam that Plaintiff's "concentration . . . was impaired," "[s]he was distractable," "[s]he was over inclusive," and "[s]he appeared to be hyperactive and agitated." (*Id.*)

With regard to social interaction, Dr. Steingard opined that Plaintiff "would be disturbing and distracting to other supervisors and especially to the general public." (*Id.*) Dr. Steingard further opined that Plaintiff's dramatic presentation would "be a problem [in] a typical work place." (*Id.*) With regard to adaptation, Dr. Steingard found that Plaintiff's "[c]oncentration is poor for typical work place hazards especially for being in dangerous or hazardous work place environment[s]." (*Id.*) Dr. Steingard again noted that "prognosis could certainly be improved with medication management and return to formal psychiatric treatment with consistent care." (*Id.*)

Dr. Steingard's opinions were contradicted by the opinions of agency psychologist Dr. Tawnya Brode. (*Id.* at 36-41.) The ALJ could, therefore, discount Dr. Steingard's opinions for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31.

The Court finds that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Steingard's opinions. Specifically, the

1 ALJ gave "no weight" to Dr. Steingard's opinions because Plaintiff "was not taking her medication at the time of the evaluation and was not receiving continuing mental treatment." (*Id.* at 27.) As stated above, Dr. Steingard opined that Plaintiff's "[p]rognosis could be significantly improved with formal psychiatric care or treatment and consistency with medication." (*Id.* at 446.)

In her decision, the ALJ failed to address with any specificity the treatment notes relating to Plaintiff's mental impairments, particularly the 2011 notes from Magellan, which relate to a time period subsequent to Dr. Steingard's opinions when Plaintiff was taking medication and obtaining treatment. *Magallanes*, 881 F.2d at 751 ("The ALJ can meet [the specific and legitimate] burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.") (internal citation and quotation marks omitted). Instead, in discussing Plaintiff's mental health treatment since 2004, the ALJ cited only a few examples and ignored many of the more recent records regarding Plaintiff's symptoms and limitations. (*Id.* at 26.) For example, the ALJ cited to 2005 records stating that Plaintiff had "fair concentration, insight, and judgment." (*Id.*) However, the ALJ failed to address Plaintiff's 2011 treatment notes reporting that Plaintiff's insight and judgment were either "limited" or "poor." (*Id.* at 490, 493.)

The ALJ also noted that Plaintiff's GAF scores ranged from 45-60, but stated without further analysis or discussion of the record evidence that "during those periods of serious symptoms, the claimant was diagnosed with amphetamine abuse/dependence and/or opioid/narcotic medication." (*Id.*) The ALJ did not address in any detail the GAF scores of 48 and 49 Plaintiff received in 2011. (*Id.* at 491, 495, 500, 534, 557.) Further, the ALJ did not cite to any evidence that Plaintiff was using drugs during this time, and at least some 2011 records state that Plaintiff has not been using since she was released from prison. (*Id.* at 493, 495, 497.) While previous records are helpful in providing a longitudinal picture of Plaintiff's mental impairments and symptoms, the ALJ's treatment of Dr. Steingard's opinions is not supported by substantial evidence because the ALJ

failed to address the most recent medical records regarding Plaintiff's symptoms while she was in treatment and taking medications. *See* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion.").

Defendant argues that there is support in the record for the conclusion that Plaintiff improved when she took her medication and obtained treatment subsequent to Dr. Steingard's opinions. (Doc. 16 at 16.) Defendant cites to examples of records that could show Plaintiff improved while on medication. However, Defendant overstates some of these records. For example, Defendant cites to Plaintiff's 2011 statement that she was "happy," but, in the record cited by Defendant, Plaintiff stated that she is "happy" when she is "feeling well." (*Id.*; AR 557.). Further, while some records note that Plaintiff could complete daily activities independently, others indicate Plaintiff has limitations in her ability to interact with others and struggles to leave the house due to her OCD. (*Id.* at 496, 499, 553, 557, 523.) Regardless, the ALJ did not specifically address or rely on any of these records. Accordingly, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Steingard's opinions.

### iii. Dr. Brode's Opinions

Plaintiff further argues that the ALJ erred in giving a non-examining source, Dr. Brode, "the most weight." (Doc. 13 at 4-5.) On April 1, 2011, non-examining Psychologist Dr. Brode completed a Mental Residual Functional Capacity Assessment based on her review of the record. (AR 39-41.) Dr. Brode opined that Plaintiff is able to understand and remember work locations and simple routines, maintain adequate attention and concentration, sustain a workday/workweek schedule, interact with others, respond to hazards, and make basic plans in a reasonably stable environment. (*Id.* at 41.)

The ALJ stated that she gave "consideration to" Dr. Brode's opinions. (*Id.* at 27.) She further stated that "[w]hile these opinions differ somewhat from those of the undersigned, they are supported by the evidence before the consultants at the time of the

1 reconsidered determination. Further, the opinions are consistent with the finding herein
2 that the claimant's impairments do not prevent the performance of all work related
3 activities." (*Id.*) However, it is unclear from the ALJ's decision what weight the ALJ
4 gave to Dr. Brode's opinions. Further, the ALJ failed to address Dr. Brode's findings in
5 any detail and to explain how Dr. Brode's opinions differ from the ALJ's findings.
6 Social Security Ruling (SSR) 96-6p, 1996 SSR LEXIS 3 (findings made by state agency
7 physicians must be treated as expert opinion evidence). Accordingly, the Court finds that
8 the ALJ's treatment of Dr. Brode's opinions is not supported by substantial evidence in
9 the record.

### iv. Plaintiff's Eligibility for SMI Benefits

Plaintiff also asserts that the ALJ erroneously stated in her decision that Psychologist Christine Ketchmark, "a treating medical source, opined that [Plaintiff] did not meet the criteria for being severely mentally ill," and, therefore, the ALJ's decision is not supported by substantial evidence. (Doc. 13 at 7; AR 27.) A review of the relevant record shows that in May 2011, Dr. Ketchmark found Plaintiff did met the SMI criteria. (*Id.* at 558.) Defendant concedes that the ALJ's assertion regarding Plaintiff's SMI eligibility is incorrect, but argues that the error is harmless. (Doc. 16 at 19 n.6.)

An ALJ's error is harmless when such error is inconsequential to the ultimate non-disability determination. *See Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rule applies to review of administrative decisions regarding disability); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's error is harmless when it is "irrelevant to the ALJ's ultimate disability conclusion.").

Here, the Court cannot find that the ALJ's misstatement regarding Plaintiff's SMI eligibility was harmless. The ALJ fails to explain the extent to which she relied on her mistaken belief that Plaintiff did not meet the SMI criteria. Further, the SMI determination was included in more recent treatment notes than most of those notes on which the ALJ relied in her decision. Therefore, the Court cannot find that this error was

inconsequential to the ultimate non-disability determination.

### b. Plaintiff's Symptom Testimony

#### i. Legal Standard

Plaintiff also argues that the ALJ erred in evaluating Plaintiff's symptom testimony. (Doc. 13 at 7-9.) An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison*, 759 F.3d at 1014-15 (citing *Lingenfelter*, 504 F.3d at 1035-36). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected to produce his pain." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1160-61 (9th Cir. 2008) ("requiring that the medical impairment 'could reasonably be expected to produce' pain or another symptom . . . requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon").

Second, if a claimant shows that she suffers from an underlying medical impairment that could reasonably be expected to produce her pain or other symptoms, the ALJ must "evaluate the intensity and persistence of [the] symptoms" to determine how the symptoms, including pain, limit the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c)(1). General assertions that the claimant's testimony is not credible are insufficient. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting Lester, 81 F.3d at 834).

In weighing a claimant's credibility, the ALJ may consider many factors,

including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284; *see Orn*, 495 F.3d at 637-39. The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms . . . ." *Smolen*, 80 F.3d at 1284 (citation omitted).

At this second step, the ALJ may reject a claimant's testimony regarding the severity of his or her symptoms only if the ALJ "makes a finding of malingering based on affirmative evidence," *Lingenfelter*, 504 F.3d at 1036 (quoting *Robbins*, 466 F.3d at 883), or if the ALJ offers "clear and convincing reasons" for finding the claimant not credible. *Carmickle*, 533 F.3d at 1160 (quoting *Lingenfelter*, 504 F.3d at 1036). "'The clear and convincing standard is the most demanding required in Social Security Cases.'" *Garrison*, 793 F.3d at 1015 (quoting *Moore v. Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

### ii. The ALJ erred in evaluating Plaintiff's symptom testimony.

At the administrative hearing, with regard to her mental impairments, Plaintiff testified that she was unable to work because she could not focus, did not like leaving her house, was scared of people, and had panic attacks. (AR 604-05). Plaintiff testified that "on a good day" she does yard work, does the dishes, mops, vacuums, makes breakfast, and helps the kids get ready for school. (*Id.* at 597.) But, on good days, Plaintiff also has "OCD really bad." (*Id.* at 598.) Plaintiff further testified that she cannot work in part due to her OCD because it takes her longer to complete tasks than someone not suffering from her condition, including leaving the house. (*Id.* at 607.) On a "bad day" Plaintiff doesn't "do anything. The laundry will pile up and pile up and the plants will die and the

floors will get filthy." (*Id.*)  On a bad day, Plaintiff asserts she is agitated, angry, impatient, and irritable, and she cries a lot or yells and then usually sleeps. (*Id.* at 559.) Plaintiff testified that she has about three good days and four bad days a week on average. (*Id.*)

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the ALJ's assessed RFC. (*Id.* at 25.) Because the ALJ did not make an affirmative finding of malingering, the ALJ was required to provide clear and convincing reasons supported by substantial evidence for concluding that Plaintiff's subjective complaints regarding symptoms related to her mental impairments were not wholly credible.

The Court finds that the ALJ failed to give sufficient reasons for discounting Plaintiff's symptom testimony.  First, the ALJ noted that Plaintiff's activities of daily living were inconsistent with her allegations of disability. (AR 27.)  In support, the ALJ cited to Plaintiff's statement during a 2006 mental examination that she was able to take care of her activities of daily living, and her statement in 2008 that she was taking yoga classes. (*Id.*)  Although on a different page of the decision, the ALJ also cited to Plaintiff's statements that she can maintain her hygiene, make her bed, do dishes, and care for pets, Dr. Steingard's observation during her examination that Plaintiff was appropriately attired and clean, and testimony by Plaintiff's mother that Plaintiff can do "chores two to three time a week for one to two hours a day with reminders." (*Id.* at 23-24.)

The ALJ did not, however, discuss or make any finding regarding the amount of time per day that plaintiff spends engaged in daily activities. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("physical activities did not consume a substantial part of Ms. Vertigan's day. This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited

- 14 -

walking for exercise, does not in any way detract from her credibility as to her overall disability"); *see also Garrison*, 759 F.3d at 1016 ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."). This analysis is particularly relevant here, where Plaintiff asserts that the activities she is able to complete differ depending on whether it is a "good" or "bad" day. The Court notes that there are other statements in Plaintiff's 2011 treatment notes that could support the ALJ's finding that Plaintiff's daily activities are inconsistent with Plaintiff's testimony (e.g., AR 553). But, the ALJ did not address or rely on any of those records in discussing Plaintiff's testimony.

Second, the ALJ cited inconsistencies in Plaintiff's testimony regarding Plaintiff's desire to work, including Plaintiff's statements that she quit working due to having kids and getting married. (*Id.* at 27.) The ALJ cited to a similar statement during a 2006 mental examination, where Plaintiff reported that she "was not interested in returning to work at this time." (*Id.*) The Court finds that these statements are not clear and convincing reasons supported by substantial evidence. Plaintiff's statement regarding her reason for stopping work related to her decision prior to her alleged onset date. (*Id.* at 590-91.) Further, Plaintiff's more recent 2011 treatment notes indicate that Plaintiff reports wanting to return to work. (*Id.* at 557.) The ALJ did not address this evidence.

Third, the ALJ discounted Plaintiff's symptom testimony because she made inconsistent statements regarding the severity of her symptoms, citing to a statement by Plaintiff that she was "doing great, feeling alert, and happy as well as no longer taking her anti-depressant medication," and a 2005 statement that Plaintiff reported no longer being hostile or angry since taking Zyprexa. (*Id.* at 27.) However, the records to which the ALJ cited do not contain the referenced statements or are several years' old and merely isolated examples that do not capture the record as whole, particularly given that the ALJ failed to meaningfully address Plaintiff's most recent 2011 treatment notes. The

Court therefore finds that these statements by Plaintiff are not clear and convincing reasons supported by substantial evidence for discounting her testimony.

Fourth, the ALJ noted that "during several follow up exams, the claimant reported having no complications with her medication," citing to a record from 2004 and one treatment note from 2011. (*Id.* at 27.) This reason is also not clear and convincing or supported by substantial evidence. The ALJ failed to address how the 2004 records undercut Plaintiff's credibility. Further, some of the 2011 treatment notes indicate Plaintiff indeed has experienced side effects from medication. (*Id.* at 493.)

Fifth, the ALJ also discounted Plaintiff's symptom testimony because she missed several mental health evaluation appointments. (*Id.*) An unexplained or inadequately explained failure to follow prescribed treatment can be a basis upon which to discredit a Plaintiff's symptom testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). However, as the Ninth Circuit Court reiterated in *Garrison*, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Garrison*, 759 F.3d at 1018 n.24. "In other words, we do not punish the mentally ill for occasionally going off their medication when the record affords a compelling reason to view such departures from prescribed treatment as part of claimant's underlying mental afflictions." (*Id.*)

Here, Plaintiff testified that she missed appointments because either she or someone in her family was sick. (*Id.* at 600.) However, the ALJ did not address the reasons Plaintiff provided for her absences.

Finally, the ALJ discredited Plaintiff's testimony because "there are inconsistencies in her reported history of substance abuse with incarceration due to drug use." (*Id.* at 27.) The ALJ fails to provide any examples or discuss the inconsistencies to which she refers. *Lester v. Chater*, 81 F.3d at 834 (the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints."). Accordingly, this reason is also an insufficient basis upon which to discredit Plaintiff's

testimony.[5]

### IV. Remand for further proceedings is appropriate here.

Having determined that the ALJ erred, the Court must vacate the Commissioner's decision. The remaining issue for the Court is whether to remand this matter for an award of benefits or for further proceedings. Such a determination is within the Court's discretion. *Smolen*, 80 F.3d at 1292.

"When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quotation omitted); *see also Treichler*, 775 F.3d at 1101 (noting that a remand for further administrative proceedings is generally useful where the record has not been fully developed, there are outstanding conflicts and ambiguities to be resolved, or the presentation of further evidence may "prove enlightening."). The Court applies the credit-as-true rule to determine that a claimant is disabled and entitled to an award of benefits only if there are no "outstanding issues [in the record] that must be resolved" and "it is clear from the record that the ALJ would be required to find the claimant disabled were [the improperly rejected] evidence credited." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). However, a "claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r, Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

The Court has considered the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. Here, the record contains evidentiary conflicts that require further evaluation by the ALJ. The Court will therefore remand this case for further proceedings and a new decision. On remand, in addition to

---

[5] Plaintiff also argues that the ALJ erred in rejecting lay witness statements and failing to consider Plaintiff's social limitations as opined by Dr. Steingard and Dr. Brode. (Doc. 13 at 5-6.) However, because the Court has found that the ALJ erred in her treatment of medical opinion evidence and Plaintiff's symptom testimony, and as detailed below will remand this matter for further proceedings and a new decision, the Court declines to reach Plaintiff's other arguments.

- 17 -

reevaluating the evidence and taking new testimony, the ALJ should accept any additional medical evidence into the record that exists for the period at issue.

Accordingly,

**IT IS ORDERED** that the Commissioners' decision is vacated and this matter is remanded to the Commissioner for further administrative proceedings consistent with this Order.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and terminate this case.

Dated this 30th day of March, 2015.

Honorable John Z. Boyle
United States Magistrate Judge